**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-00535-REB

RABIHA CHARAFEDDINE,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

---

**ORDER AFFIRMING COMMISSIONER**

---

**Blackburn, J.**

    The matter before me is plaintiff's **Complaint** [#1],[1] filed March 1, 2012, seeking review of the Commissioner's decision denying plaintiff's claims for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff alleges that she is disabled as a result osteoarthritis of the back, right shoulder, and left knee. After her application for disability insurance benefits was denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on January 20, 2011. At the time of the hearing, plaintiff was 59 years old. She has a high school education and past relevant work experience as a sales clerk,

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

bank teller, and cashier.  She did not engage in substantial gainful activity between her alleged date of onset, June 1, 2002, and her date last insured, March 30, 2005.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance benefits.  Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations.[2]  The ALJ found that plaintiff had the residual functional capacity to perform light work with the ability to alternate sitting and standing every 30 minutes and other postural limitations.  Although these limitations precluded plaintiff's past relevant work, the ALJ concluded that there were other jobs existing in significant numbers in the national and local economies that were within her residual functional capacity.  She therefore found plaintiff not disabled at step five of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  **Campbell v. Bowen**, 822 F.2d 1518,

---

[2] Other alleged impairments were found to be not severe.  (Tr. 14.)  Plaintiff does not challenge that finding on appeal.

1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  **See Kelley v. Chater**, 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ  must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f).  **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a

disability in the first four steps of this analysis. ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. ***Id.*** A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

## III. LEGAL ANALYSIS

Plaintiff alleges that the ALJ failed to properly assess the opinion of her treating physician, Dr. Alex Goldsmith, who believed that plaintiff suffered from far more severe functional limitations prior to her date last insured than the ALJ's residual functional capacity assessment recognized. She also claims the Appeals Council erroneously failed to consider additional evidence submitted by Dr. Goldsmith and should have remanded the case to the ALJ in light of his opinions. Because I find no such error in the ALJ's opinion, however, I affirm.

Of particular relevance to this case, plaintiff was required to prove that one or more of her impairments became disabling prior to her date last insured, March 30, 2005. *See* 20 C.F.R. § 404.131(b); ***Ivy v. Sullivan***, 898 F.2d 1045, 1048 (5th Cir. 1990); ***Ward v. Shalala***, 898 F.Supp. 261, 263 (D. Del. 1995).[3] The ALJ recognized this limitation on the scope of her analysis and considered evidence outside the relevant time period only to the extent it provided context for medical treatment received during the operative window. (*See* Tr. 17.)

In April 2010 and again in January 2011, Dr. Goldsmith submitted essentially identical evaluations of plaintiff's residual functional capacity. (Tr. 630-634, 678-682.) Therein, he suggested, *inter alia*, that plaintiff could not sit or stand for more than 30

---

[3] This standard does not require plaintiff to prove an inability to engage in substantial gainful activity for a period of twelve continuous months prior to his date last insured, but only that she became disabled on or before that date. *See* 42 U.S.C. § 423(d)(1). So long as that period commences prior to the date last insured, there is no requirement that the entire twelve month period predate the date last insured. *See **McQuestion v. Astrue***, 629 F.Supp.2d 887, 901-903 (E.D. Wis. 2009) (citing cases); *see also* **Social Security Ruling** 83-20, 1983 WL 31249 at *1 (SSA 1983) ("Although important to the establishment of a period of disability and to the payment of benefits, the expiration of insured status is not itself a consideration in determining when disability first began.").

minutes at a time or more than two hours in a day total, that she would need to alternate sitting and standing at will and take ten- to fifteen-minute breaks hourly, that she could occasionally lift less than ten pounds, and that she was likely to be absent more than four days per month due to her impairments or treatment for them. He stated that plaintiff's impairments and the limitations the occasioned had existed at such a level of severity the past "8 years or more."

The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).[4] Even if a treating source opinion is not given controlling weight, it is still entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527[.]" **Social Security Ruling 96-2p**, 1996 WL 374188 at *4 (SSA July 2, 1996). *See also Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).[5] In all events, a

---

[4] The ALJ did not specify what particular weight she gave to these opinions, but it is clear from the record that she gave them little, if any, credence, as she adopted none of Dr. Goldsmith's suggested functional limitations in her own residual functional capacity assessment. Any error in failing to particularly articulate the weight assigned to the treating source opinion therefore undoubtedly was harmless. *See Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir. 1988).

[5] These factors include:

1. the physician's length of treatment of the claimant;
2. the physician's frequency of examination;
3. the nature and extent of the treatment relationship;
4. the support of the physician's opinion afforded by the medical evidence of record;
5. the consistency of the opinion with the record as a whole; and
6. the specialization of the treating physician.

20 C.F.R. § 404.1527(d)(2). However, the regulations require only that the ALJ "apply" these factors, not that she recite them as a litany. *Mestas v. Astrue*, 2010 WL 3604295 at *3 (D. Colo. Sept. 7, 2010).

treating source opinion may not be rejected absent good cause for specific, legitimate reasons clearly articulated in the hearing decision. ***Watkins***, 350 F.3d at 1301; ***Goatcher v. United States Department of Health & Human Services***, 52 F.3d 288, 290 (10th Cir. 1995); ***Frey v. Bowen***, 816 F.2d 508, 513 (10th Cir. 1987). Good cause may be found where the treating source's opinion is brief, conclusory, or unsupported by the medical evidence. ***Frey***, 816 F.2d at 513.

Plaintiff argues that, having essentially rejected Dr. Goldsmith's opinion, the ALJ could not properly assess her residual functional capacity. I disagree. "[T]he ALJ was not required to adopt or rely on any medical source opinion in making her residual functional capacity assessment because the determination of residual functional capacity is not a medical opinion." ***Moses v. Astrue***, 2012 WL 1326672 at *4 (D. Colo April 17, 2012). Instead, residual functional capacity is assessed "based on all of the relevant medical and other evidence," 20 C.F.R. § 404.1545(a)(3), "including medical records, observations of treating physicians and others, and plaintiff's own description of his limitations," ***Noble v. Callahan***, 978 F.Supp. 980, 987 (D. Kan. 1997). In other words, although the ALJ's determination must be grounded in some medical evidence, *see* ***Anderson v. Shalala***, 51 F.3d 777, 779 (8th Cir. 1995), it ultimately is an administrative determination reserved to the Commissioner, 20 C.F.R. § 404.1546; ***Rutledge v. Apfel***, 230 F.3d 1172, 1175 (10th Cir. 2000).

Here, the ALJ reviewed the medical evidence – including Dr. Goldsmith's own treatment notes – relating to plaintiff's severe impairments during the relevant time

7

period. (Tr. 17-18.)[6] She noted that, prior to her date last insured, plaintiff's complaints were intermittent and well-controlled with medication and conservative treatment. Although plaintiff points to other evidence which might support a contrary conclusion, ultimately, conflicts in the evidence such as these are for the ALJ to resolve, and she did so appropriately here. **See Reyes v. Bowen**, 845 F.2d 242, 245 (10th Cir. 1988); **Gleason v. Apfel**, 1999 WL 714172 at *4 (D. Kan. Sept. 1, 1999). The evidence of record clearly supports her residual functional capacity determination, and it is not within my proper purview to reweigh the evidence and come to a different conclusion. **See Thompson**, 987 F.2d at 1487.[7]

Nor do I perceive any reversible error in the Appeals Council's failure to discuss Dr. Goldsmith's more recent opinion in depth. (**See** Tr. 692.) The Commissioner's regulations provide that the Appeals Council must "consider" new evidence (i.e., evidence that relates to the period on or before the date of the ALJ's hearing decision) as part of the totality of the evidence and "review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b). **See also Martinez v. Barnhart**, 444 F.3d 1201, 1207 (10th Cir. 2006); **O'Dell v. Shalala**, 44 F.3d 855, 859 (10th Cir.

---

[6] The ALJ's statement that Dr. Goldsmith "has treated [plaintiff] since February 2008" (Tr. 18) clearly was a scrivener's error, as her discussion of the evidence plainly indicates that she knew plaintiff had received treatment from Dr. Goldsmith since 1998. **See Poppa v. Astrue**, 569 F.3d 1167, 1172 n.5 (10th Cir. 2009).

[7] Nor was the ALJ required to recontact Dr. Goldsmith for further clarification in this instance. **See White v. Barnhart**, 287 F.3d 903, (10th Cir. 2001) ("[I]t is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the evidence the ALJ receive[s] from [the claimant's] treating physician that triggers the duty.") (citation and internal quotation marks omitted; alterations in original).

8

1994); ***Stephens v. Callahan***, 971 F.Supp. 1388, 1391-92 (N.D. Okla. 1997).  There is no requirement that the Appeals Council specifically discuss or analyze the new evidence where it denies review.  ***Martinez***, 444 F.3d at 1207-08.  Dr. Goldsmith's later report was made part of the record on appeal (***see*** Tr. 4, 692), and the Appeals Council stated that it had considered that evidence (Tr. 1).  No more is required under law.  ***See Martinez***, 444 F.3d at 1207-08.[8]

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated March 27, 2013, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge

---

[8] Moreover, I see nothing in Dr. Goldsmith's later report that undermines the Appeals Council's determination that such evidence would not have changed the ALJ's determination. (Tr. 2.) First, the report is simply a more concise interpretation of Dr. Goldsmith's assessment of his own treatment notes, and thus is not really all that "new." More importantly, however, as the Commissioner ably details in his response (**Def. Br.** at 18-19), none of the evidence on which Dr. Goldsmith relies as support for his assessment of plaintiff's limitations clearly limits the inferences to that of only disability.